**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **CRIMINAL NO.: ELH-14-388** |
| **v.** | * | |
| | * | |
| | * | |
| **DAVID HENDRICKS** | * | |
| | * | |
| | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\***

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PRETRIAL**
**MOTIONS**

The United States of America, by and through counsel Rod J. Rosenstein, United States

Attorney for the District of Maryland, and Matthew K. Hoff, Special Assistant United States

Attorney for said District, hereby submits this memorandum in opposition to the Defendant's

pre-trial motions and in support submits the following:

**PROCEDURAL BACKGROUND**

On August 21, 2014, the Defendant, David Hendricks ("Hendricks"), was charged in a

one-count indictment alleging that on or about May 12, 2014, he possessed a firearm after having

been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (ECF 1). On September 23,

2014, the Defendant, through counsel, filed two motions: a *Motion to Suppress Tangible*

*Evidence* (ECF 12) and a *Motion to Suppress Statements* (ECF 13). For the following reasons,

the Defendant's motions should be denied.

**FACTUAL BACKGROUND**

On May 12, 2014, at approximately 3:30 p.m., Officers Michael Mercado, Norman

Rogers, Steven Evans, and Sergeant Fontaine Smallwood of the Baltimore City Police

Department (BPD) were on patrol in the area of the 800 block of N. Patterson Park Avenue in Baltimore, Maryland. All four of the officers were wearing plain clothes with tactical vests that clearly displayed "Police" on the chest. The officers were traveling in a single unmarked police vehicle. This area is heavily patrolled by the BPD as it is known for violence and was the site of a recent homicide.

During this time, the officers observed three males, one of which was the Defendant, David Hendricks, together walking southbound on Patterson Park Avenue. Hendricks was carrying a pink children's backpack. Officer Mercado observed two of the males performing "security checks" on more than one occasion. Specifically, Officer Mercado saw the two males walking with rigid arms and their hands in their waistband area, commonly referred to as the "dip" area. Officer Mercado, based on his training and experience, recognized these actions and "security checks" to be consistent with the characteristics of an armed person. Officer Mercado alerted the other officers in the vehicle of his observations and Sergeant Smallwood observed the body position of the two males as consistent with Officer Mercado's observations. Based on their observations, the officers believed that the males may be armed and decided to stop their vehicle to conduct a frisk of the males.

The officers stopped, exited their vehicle, and Officer Mercado asked the males to stop. The three males all began to run in opposite directions. Hendricks ran in the direction of Officer Mercado while still reaching into his waistband area and turning his body away from Officer Mercado. Officer Mercado told Hendricks to stop running and Hendricks continued reaching into his "dip" area. Believing that Hendricks was reaching for a firearm, Officer Mercado shouted, "Stop or I'm going to tase you," referring to his BPD departmental Electronic Control Device (ECD), commonly referred to as a Taser. Hendricks continued to run towards Officer Mercado

and then past him. Officer Mercado then deployed his ECD in an attempt to incapacitate Hendricks. One of the prongs of the ECD struck Hendricks in the back, however, the ECD had no effect on Hendricks and he ran away from the officers. Officers Rogers and Mercado pursued Hendricks on foot, while Officer Evans and Sergeant Smallwood pursued Hendricks in their vehicle.

While pursuing Hendricks, Officer Rogers observed him remove the backpack from his shoulder and attempt to gain access to the backpack while running. Eventually, Officer Mercado and Officer Rogers saw Hendricks drop the backpack and began to run back towards Officer Mercado, who had his service weapon drawn. Hendricks then stopped and immediately stated, "It's not mine. It's not mine." Officer Evans arrived on scene and picked up the pink backpack dropped by Hendricks. Officer Evans noticed the backpack was heavy and he opened the backpack to find one Smith & Wesson Model 39 9mm Luger handgun, serial number 61962. The firearm was unloaded. Hendricks was arrested and placed in the back of a police vehicle, while the officers awaited the arrival of a medic to transport Hendricks to the hospital due to the prong of the ECD in his back. While waiting for the medic and in the back of the police vehicle, Hendricks told Officer Evans, "Cut me a break Sarge. I was getting rid of the gun for somebody." Officer Evans knew Hendricks because he arrested Hendricks on a prior narcotics violation.

Hendricks was transported by ambulance to the emergency room at Johns Hopkins Hospital where a doctor removed a single ECD prong from his back. Hendricks was released from the hospital around 4:30 p.m. and was then transported to the BPD Eastern District police station. At 6:25 p.m., BPD Detective Isaac Carrington presented the Defendant with a BPD Explanation and Waiver of Rights form (attached hereto as Exhibit 1) and a BPD Notice and

Waiver of Right to Prompt Presentment form (attached hereto as Exhibit 2). Detective Carrington reviewed the forms with Hendricks and he acknowledged his understanding of his rights by initialing each line of the forms and signing each form. At approximately 6:35 p.m., Detective Carrington, with Officer Mercado present, reviewed each of these forms again with Hendricks during a tape recorded statement. Hendricks informed Detective Carrington that he could read and write. Hendricks was asked if he understood the forms and if he acknowledged that he understood. Hendricks also read the last line of each form out loud and stated he understood his rights. Hendricks then agreed to speak with the officers. During his recorded statement, Hendricks indicated that he possessed the firearm because a friend of his was the victim of a homicide and he felt he needed the firearm for protection. Hendricks described the firearm as a black and brown 9mm handgun. Hendricks also admitted that he sold marijuana to support his habits. Hendricks told the officers that he purchased the firearm on the street from someone for two hundred and fifty dollars and that he did not intend to use the firearm. However, Hendricks indicated that the firearm was operable because when he first purchased the firearm he fired it once into the air to ensure that it worked. The interview lasted approximately seventeen minutes and thirty seconds and concluded around 6:50 p.m. No threats or promises were made to Hendricks to provide a statement to the officers.

Hendricks's prior criminal record includes convictions for possession with intent to distribute narcotics, conspiracy to distribute narcotics, and distribution of cocaine.

**ARGUMENT**

**I.      THE MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED.**

Hendricks has moved to suppress any evidence seized as a result of his arrest on May 12, 2014. Hendricks alleges that his arrest was made without reasonable suspicion or probable cause and, therefore, all evidence seized should be suppressed.

**A.      The Officer's Pursuit of Hendricks did not Constitute a *Terry* Stop.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It has long been established, however, that not all interactions between the police and citizens amount to "seizures" of persons. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). "In the absence of physical force a seizure occurs only if (i) the officer makes a show of authority such that a reasonable person would not feel free to leave, and (ii) the defendant submits to the officer's show of authority." *United States v. Coley*, 464 F. Supp. 2d 487, 490 (D. Md. 2006) (citing *California v. Hodari D.*, 499 U.S. 621, 626B629 (1991) and *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993)). Thus, if a person flees upon being approached by an officer, that person has not submitted to a show of authority by the officer and no seizure has occurred. *Hodari D.*, 499 U.S. at 629.

In *Hodari D.*, two officers on patrol came across a group of four or five youths huddled around a car parked at the curb. *Id.* at 623. The youths saw the officers' car approach, and the group dispersed. *Id.* One officer pursued the defendant on foot, and the second officer followed in the patrol car. *Id.* Before the defendant was caught, he "tossed away what appeared to be a small rock." *Id.* Officers eventually tackled the defendant and recovered the rock, which was later determined to be crack cocaine. *Id.* The Supreme Court assumed that the officers' pursuit

"constituted a 'show of authority' enjoining [the defendant] to halt," but the defendant "did not comply with that injunction and therefore was not seized until he was tackled." *Id.* at 629.

Here, Officer Mercado believed that Hendricks was displaying the characteristics of an armed person and he exited the vehicle to investigate his suspicions. Hendricks fled immediately upon Officer Mercado exiting the vehicle and asking him to stop. Hendricks continued to flee from the police even after Officer Mercado advised him to stop or he would "tase" him. Because Hendricks refused to comply with any official show of authority, a seizure for Fourth Amendment purposes did not occur until Hendricks stopped after dropping the backpack and the officers then arrested him. In short, no *Terry* stop ever occurred, and the court need not analyze whether the officers had a reasonable suspicion that criminal activity may have been afoot. *See United States v. Terry*, 392 U.S. 1, 30 (1968); *Hodari D.*, 499 U.S. at 629.

**B.     The Defendant Lacks Standing to Challenge Abandoned Property.**

"The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Circ. 1995). As the Fourth Circuit held in *United States v. Stevenson*, "the proper test for abandonment is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned." *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005) (quoting *United States v. Haynie*, 637 F.2d 227, 237 (4th Cir. 1980)). An analysis of act and intent on the part of the person who abandons property must be determined. "Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered." *United States v. Davis*, 657 F. Supp. 2d 630, 648 (D. Md.

Sept. 15, 2009), *aff'd*, 690 F.3d 226 (4th Cir. 2012), (quoting *United States v. Hoey*, 983 F.2d 890 (8th Cir. 1993)).

Here, Hendricks ran from the police and a foot chase ensured. While the officers were chasing Hendricks he tossed a pink backpack containing a firearm on a public street. Immediately after tossing the backpack, Hendricks stated to the officers, "It's not mine. It's not mine." The actions of Hendricks during this time and his abandonment of the firearm in plain view in a public place clearly established that he could not have maintained a reasonable expectation of privacy in the backpack or the firearm. Additionally, Hendricks initially disclaimed ownership of the backpack.

Therefore, because Hendricks abandoned the backpack and the firearm, he lost any reasonable expectation of privacy he may have had in the property and lacks standing to challenge the evidence seized.

**C.     The Officers had Probable Cause to Arrest the Defendant.**

Even assuming, *arguendo*, that Hendricks has standing to challenge the seizure of the backpack and firearm, the arresting officers had probable cause to arrest Hendricks and, therefore, any evidence seized pursuant to that arrest is admissible.

As discussed *supra*, a person who flees from the police is not "seized" for Fourth Amendment purposes until he is apprehended or submits to the police officer's assertion of authority. *Hodari*, 499 U.S. 621, 626 (1991).  Given Hendricks flight from the police, Hendricks was not "seized" until he was apprehended by the officers.  Importantly, as noted above, the officers saw Hendricks abandon the backpack with the firearm *before* he was apprehended. Therefore, the firearm abandoned by the Hendricks was not the fruit of a seizure. *See Hodari* at 629.

Probable cause exists where, "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City Lago Vista*, 532 U.S. 318, 354 (2001). A determination of probable cause "is to be judged by the 'totality of the circumstances.'" *Manbeck* at 376 (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).

In the instant case, Hendricks was observed by Officer Mercado displaying the characteristics of an armed person and carrying a pink backpack. Based on the observations, the officers decided to investigate further and when Officer Mercado directed Hendricks to stop, Hendricks ran. While running, two of the officers saw Hendricks drop the pink backpack. The backpack was recovered by Officer Evans a short distance from Hendricks. Upon opening the backpack, Officer Evans immediately observed a firearm.

All of this information taken together clearly establishes that the police officers had probable cause to believe that Hendricks committed a crime under Maryland law, specifically Wearing and Carrying a Firearm, in violation of section 4-203 of the Criminal Law Article of the Annotated Code of Maryland. Accordingly, the arrest of Hendricks was lawful and any evidence seized pursuant to that arrest should be admitted.

## II.    THE MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED.

Hendricks asserts that he was taken into custody without reasonable suspicion or probable cause and any statements, admissions, or confessions were obtained in violation of the Supreme Court's decision in *Miranda v. Arizona* and his constitutional rights.

Hendricks made statements to police officers on three occasions. The first occasion occurred when the Defendant dropped the backpack and said to the officer's, "It's not mine. It's not mine."[1] The second occasion occurred after Hendricks was arrested and while he was sitting in the back of a police vehicle awaiting a medic. Hendricks final statement occurred when he provided officers with a taped statement at the police station. For the following reasons, the Defendant's motion should be denied.

The law is well established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court further stated, "If a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent." *Id*. at 467-468. Additionally, "[i]n order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." *Id*. at 473.

> **A.    The Defendant's Statement in the Police Vehicle is Admissible Because the Police Officers had Probable Cause to Arrest Mr. Hendricks and No Custodial Interrogation Occurred.**

Hendricks seeks to suppress his statements after the officers arrested him for possession of the firearm and while he was in a police vehicle awaiting the arrival of a medic. As discussed *supra*, Hendricks was lawfully arrested. *See* § I.C. Additionally, because there was no custodial interrogation by the BPD officers, this motion should be denied.

---

[1] The government does not intend to introduce this statement by the Defendant against him at trial, therefore, the Defendant's motion regarding this statement is moot.

In the present case, it is clear that Hendricks was in "custody" for *Miranda* purposes. Hendricks was arrested, handcuffed, and seated in the back of a police vehicle when he spoke to Officer Evans. However, custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444.

At no point in time during the initial arrest of Hendricks did law enforcement officers begin questioning him. "The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Blake*, 571 F.3d 311, 339 (4th Cir. 2009) (quoting *R.I. v. Innis*, 446 U.S. 291, 303 (1980)). Hendricks was arrested and placed into the back of the police vehicle while awaiting a medic to transport him to the hospital to be treated for the ECD prong in his back. During this time, Officer Evans was sitting with Hendricks in the back of the vehicle. Hendricks, of his own accord, asked Officer Evans to "cut him a break" and informed him that he was "getting rid of the gun for someone." Officer Evans did not ask Hendricks any questions and there could be no actions on the part of Officer Evans that would elicit an incriminating statement from Hendricks. Therefore, because Hendricks made statements of his own volition denying possession of the firearm there was no "interrogation" for *Miranda* purposes.

The government concedes that Hendricks was certainly in custody when he made these statements. However, because no custodial interrogation occurred the procedural safeguards established in *Miranda v. Arizona* were not required. Consequently, because Hendricks was

lawfully arrested and no violation of his rights occurred in relation to his statement while sitting

in the police vehicle, the Defendant's motion should be denied.

> **B.      There Were No Fifth or Sixth Amendment Violations in Connection with the Defendant's Taped Statement Because the Defendant's Waiver of Rights was Knowing and Voluntary and His Statement was Voluntary.**

Statements made to law enforcement must comply with the requirements of *Miranda* and

the Due Process clause of the Fourteenth Amendment.  *Colorado v. Connelly*, 479 U.S. 157

(1986)*; Miranda,* 384 U.S. 436 (1966).  Where *Miranda* rights have been waived, the analysis of

the voluntariness of the *Miranda* waiver and the voluntariness of the statements under the Due

Process Clause is the same.  *United States v. Christobal*, 293 F.3d 134 (4th Cir. 2002).

As the Supreme Court held in *Miranda,* a defendant may waive his *Miranda* rights

"provided the waiver is made voluntarily, knowingly and intelligently."  *Miranda* at 444. In order

to be knowing and intelligent, the waiver must have been made "with a full awareness of both the

nature of the right being abandoned and the consequences of the decision to abandon it."

*Christobal,* 293 F.3d at 139-140.  The test for determining whether a statement is voluntary

under *Miranda*, "is whether the defendant's will has been overborne or his capacity for self-

determination critically impaired."  *Id*. at 140, *quoting United States v. Pelton,* 835 F.2d 1067,

1071 (4th Cir. 1987).  To make this determination, courts must consider the "totality of the

circumstances," including the characteristics of the defendant, the setting of the interview, and

the details of the interrogation.  *Pelton*, 835 F.2d at 1071.

Coercive police activity is a necessary predicate to a finding that a *Miranda* waiver was

involuntary.  *Connelly*, 479 U.S. at 167.  Such coercion has been found where the suspect was

subjected to severe physical abuse, *see Brown v. Mississippi*, 297 U.S. 278 (1936), held

incommunicado and questioned for over 36 hours without sleep or rest, *see Ashcraft v.*

*Tennessee*, 322 U.S. 143 (1944), given "truth serums," *see Townsend v. Sain*, 372 U.S. 293 (1963), or threatened with a loaded gun while wounded, *see Beecher v. Alabama*, 389 U.S. 35 (1967).

The government concedes that Hendricks was arrested and in "custody" for the purposes of this analysis. The taped interview occurred inside of the police station after he was arrested. Additionally, the government agrees that an interrogation did in fact occur as Detective Carrington and Officer Mercado questioned Hendricks. Therefore, at issue is whether Hendricks knowingly and intelligently waived his *Miranda* rights and whether his statement was voluntary. As discussed above, for a proper waiver of rights to occur a defendant must be informed unequivocally of his right against self-incrimination and his right to counsel, and a waiver of those rights must be knowing and voluntary.

In the instant case, Detective Carrington began the taped interview by asking Hendricks if he can read and write and Hendricks replies that he can. Hendricks was provided a written BPD Explanation and Waiver of Rights form and a BPD Notice and Waiver of Right to Prompt Presentment form. *See* Exhibits 1 and 2. Detective Carrington discussed the form with Hendricks before questioning him. Detective Carrington completed the portion of the form that refers to the Defendant's name, the date and time, and the location of the interview. Listed on the form are the rights that the Defendant would be giving up if he agreed to speak with the officers. These rights are listed as: 1) You have the right to remain silent; 2) Anything you say or write may be used against you in a court of law; 3) You have the right to talk with an attorney before any questioning or during any questioning; 4) If you agree to answer questions, you may stop at any time and request an attorney and no further questions will be asked of you; and 5) If you want an attorney and cannot afford to hire one, an attorney will be appointed to represent you. After each

line, Hendricks acknowledged that he understood each of these advisements by placing his initials after each of these statements.

Hendricks was initially advised of his *Miranda* rights before the taped statement began. After the initial advisement of rights, Detective Carrington began recording the interview with Hendricks. At the beginning of the interview, Detective Carrington again reviewed the Explanation and Waiver of Rights form and the BPD Notice and Waiver of Right to Prompt Presentment form with Hendricks. Detective Carrington asked Hendricks if he understood the forms and Hendricks acknowledged that he understood. The last line of the form reads, "I have been advised of and understand my rights. I freely and voluntarily waive my rights and agree to talk with the police without having an attorney present." Detective Carrington asked Hendricks to read aloud this last statement and if he understood this statement. Lastly, Hendricks signed the form. Detective Carrington asked Hendricks again, after reviewing both forms with him, if he understood his rights. Hendricks continued to maintain that he understood his rights and agreed to speak with the officers. Hendricks then provided a tape recorded statement.

A thorough review of Hendricks' rights pursuant to the Fifth and Sixth Amendments was undertaken by Detective Carrington. Detective Carrington reviewed the forms with Hendricks once before recording the taped statement and a second time at the beginning of the recording. Additionally, Hendricks read out loud the last line of both BPD forms. Hendricks was asked multiple times if he understood the rights he was giving up by speaking with the officers and he stated that he understood. None of the police officers involved in this case promised Hendricks anything in exchange for his statement and no threats were made towards him to provide a statement. Additionally, the statement was made a short time, approximately three hours, after Hendricks' initial arrest and release from the hospital. The statement was also short in duration

lasting approximately seventeen and a half minutes. Furthermore, there was no coercive activity on the part of the police officers. Hendricks' waiver of his *Miranda* rights was knowing and voluntary and his statement was made voluntarily, therefore, the Defendant's motion should be denied.

## III.    CONCLUSION

For all the reasons noted above, Defendant's motions should be denied.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____/s/_____
Matthew K. Hoff
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of January, 2015, a copy of the foregoing Government's Response in Opposition was electronically sent via CM/ECF to counsel for the Defendant, Patrick Kent, Esquire.

_____/s/_____
Matthew K. Hoff
Special Assistant United States Attorney